IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

EDWARD STEWART                                                          PLAINTIFF

v.                                                   CAUSE NO. 1:13CV95-LG-JMR

ALLIEDBARTON SECURITY SERVICES
and SINGING RIVER MALL, LLC                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motion for Summary Judgment [38] filed by

Singing River Mall, LLC, and the Motion for Summary Judgment [40] filed by

AlliedBarton Security Services.  The defendants have also filed three Motions to

Strike [47, 51, 55] that concern evidence and pleadings submitted by Edward

Stewart in opposition to the Motions for Summary Judgment.  After reviewing the

submissions of the parties and the applicable law, the Court finds that the Motions

for Summary Judgment should be granted.

## FACTS

AlliedBarton agreed to provide security officers to one of its clients, Singing

River Mall.  (AlliedBarton's Mot., Ex. 2 at 2-3, ECF No. 40-2).  In November 2011,

AlliedBarton, by and through its Area Manager Steven Robinson, hired Stewart, an

African-American male, to serve as one of the security officers at the mall.  (*Id.* at

3).  On January 4, 2012, Robinson promoted Stewart to site supervisor, a position

that had been vacant since October 2011.  (*Id.* at 2-3).

Stewart claims he overheard AlliedBarton Lead Officer William Gennero

complaining to a fellow security officer about Stewart's promotion on or about

January 6, 2012.  (AlliedBarton's Mot., Ex. 3 at 85-6, ECF No. 40-3).  According to

Stewart, Gennero said he was not going to work for a "nigger," and he claimed to be

a house dragon in the Ku Klux Klan.  (*Id.* at 86-7)  Gennero and the other officer

were unaware that Stewart overheard the conversation.  (*Id.* at 86).

Gennero complained that he was not selected for the site supervisor position

because he was on an approved medical leave.  (AlliedBarton's Mot., Ex. 4 at 3, ECF

No. 40-4).  Claire Balfour, AlliedBarton's Regional Director, investigated the

circumstances surrounding Stewart's promotion, determining that the position had

not been posted, and Stewart was merely selected for the position without having to

formally apply.  (*Id.*)  Balfour testifies, "After concluding this investigation, I

determined that the selection process was not conducted in the best possible

manner.  Accordingly, I decided to re-open the position and allow any interested

party to apply."  (*Id.*)  Balfour claims she was not aware of the race of either

Gennero or Stewart when she made this decision.  (*Id.*)

After the position was reopened, both Gennero and Stewart submitted

applications.  (AlliedBarton's Mot., Ex. 2 at 4, ECF No. 40-2).  Area Manager

Robinson interviewed both men before selecting Gennero for the position.  (*Id.*)

Robinson cited Gennero's longer tenure with AlliedBarton, his more extensive

knowledge of company policies, and other similar factors as reasons for his decision.

(*Id.*)  After Gennero was selected, Stewart was not demoted to his former position of

security officer but he was placed in a new position, shift supervisor.  (*Id.*)

In his deposition, Stewart claimed that he reported Gennero's alleged racist statements before the site supervisor position was reopened, but in his Charge of Discrimination submitted to the Equal Employment Opportunity Commission, Stewart stated that he reported the incident after he was demoted, on January 16, 2012.[1]  (AlliedBarton's Mot., Ex. 3 at 91-92, ECF No. 40-3; AlliedBarton's Mot., Ex. 14 to Ex. 3, ECF No. 40-3).  AlliedBarton Area Manager Robinson has testified that Stewart reported the allegations to him on January 16, 2012, after he selected Gennero for the site supervisor promotion.  (AlliedBarton's Mot., Ex. 2 at 4, ECF No. 40-2).

Cassandra DeGraffenried, AlliedBarton's Human Resources Coordinator, has provided the following description of her investigation of Stewart's allegations against Gennero:

> 3.
> On or around January 16, 2012, Allied Barton Area Manager Steve Robinson reported to me that . . .  Plaintiff alleged to him that he [sic] another employee, William Gennero, made a comment about his race.
> 4.
> Shortly thereafter, I interviewed each of AlliedBarton's employees at the Mall.  None of the employees, including Mr. Gennero and Mr. Lambert, corroborated Plaintiff's allegations.  During my investigation, I noted a reason not to credit Plaintiff's allegations

---

[1] Stewart claims that his EEOC Charge is incorrect, because it was typed by someone else.  (AlliedBarton's Mot., Ex. 3 at 90, ECF No. 40-3).  However, he admits that he signed the Charge under penalty of perjury, verifying that the statements contained in the Charge were true and correct to the best of his knowledge.  (*Id.*)

> (other than the fact that no employee corroborated the allegations).
> Specifically, Plaintiff did not report his allegations until ten days after
> the alleged comments, and finally made the report only after Mr.
> Gennero was selected over him for the Site Supervisor position.
> Additionally, the reason that Plaintiff gave for being at the office at a
> time when he was not scheduled to work was vague.  Accordingly, I
> determined that Plaintiff's allegations were unfounded, and instead
> were "sour grapes" resulting from Mr. Gennero's selection for the Site
> Supervisor position.

(AlliedBarton's Mot., Ex. 5 at 1-2, ECF No. 40-5).

Stewart filed his first EEOC Charge against AlliedBarton on March 1, 2012,

alleging race discrimination due to Gennero's comments.  (AlliedBarton's Mot., Ex.

14 to Ex. 3, ECF No. 40-3).  Stewart claims that Gennero retaliated against him for

filing the EEOC Charge by requiring Stewart to work multiple shifts within a

twenty-four hour period.  (Compl. at 1-2, ECF No. 1).

On March 20, 2012, Gennero sent the following email to AlliedBarton District

Manager Scott Schuttinga and Singing River Mall:

> Ed [Stewart] is a loose cannon.  His behavior is unpredictable.  Thus
> far he has restrained himself from getting physical.  I am not at all
> certain how much longer he can do that.  My concern is that if all 6'3"
> and over three hundred pounds attacks, one or both of us will be
> carried out in an ambulance.  I am not by any means afraid of him.  I
> just want my medical bills covered if it does occur.  I am not an
> alarmist.  I spent 20 years in law enforcement relying on my survival
> instincts.  Ed is at least emotionally if not mentally unstable in my
> opinion.  It is almost like there are two of him.  For the first few weeks
> after the entire promotion debacle he was hostile.  I gave him enough
> room and enough time to settle down.  For about 4 weeks up until a
> week ago Saturday he was pleasant to work with.  He stated that his
> wife told him if he was upset, take it to management and make peace
> with me.  What changed his attitude back is unknown to me.

(Pl's Resp., Ex. A-3, ECF No. 43-3).  The context in which this email was sent is not

completely clear, but it appears that Area Manager Robinson had asked Gennero to give an attendance write-up form to Stewart on his first day back at work even though Gennero was not scheduled to work that day. (*See id.*) Gennero was concerned that Stewart may become angry and attack him. Gennero explained in an another email: "I am not worried about the few minutes pay for Friday. My question is[:] If I am not on the clock will worker's comp cover me if Ed loses control." (*Id.*) These emails were not sent directly to Stewart, but he was copied on a reply that was sent to the email by Singing River Mall, thus enabling him to read the entire email history. (*See id.*) As a result of these emails, Schuttinga counseled Gennero about the need for professionalism and his failure to follow Singing River Mall's prior instructions regarding communications. (AlliedBarton's Mot., Ex. 7 at 4, ECF No. 40-7).

On March 23, 2012, Stewart sent an email to AlliedBarton resigning his position. (Pl. Resp., Ex. S, ECF No. 44-6). He cited Gennero's emails, the incident in which Gennero called him the n-word, and AlliedBarton's inaction in handling the situation as reasons for his resignation. (*Id.*) Stewart filed a second EEOC Charge against AlliedBarton on April 12, 2012, alleging race discrimination and retaliation. (Compl., Ex. 1, ECF No. 1-1).

Stewart received notice of his right to sue, and on March 26, 2013, he filed this lawsuit, asserting Title VII hostile work environment and retaliation claims against AlliedBarton and Singing River Mall. Stewart has proceeded pro se throughout this litigation.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Celotex Corp.*, 477 U.S. at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I.  Defendants' Motions to Strike

The defendants have filed Motions [47, 51] asking the Court to strike unauthenticated recordings produced by Stewart.  Stewart claims that the recordings were made of conversations with various individuals related to this lawsuit.  However, he has not even attempted to authenticate the recordings pursuant to Fed. R. Civ. P. 901.  Therefore, the defendants' Motions are granted.

The defendants also ask the Court to strike factual allegations made in Stewart's pleadings that are either unsupported by a citation to evidence or are in contradiction to the record.  This request is also granted.  In addition, in its Motion [47] AlliedBarton requests that the Court strike Stewart's allegations related to

Gennero's promotion as irrelevant.  This request is denied.  Finally, AlliedBarton

has filed a Motion [55] asking the Court to strike a sur-reply filed by Stewart

without permission.  This Motion is granted.

## II.  Singing River Mall's Motion for Summary Judgment

Singing River Mall argues that it is entitled to summary judgment as to all of

Stewart's claims, because Singing River Mall was not Stewart's employer.  In the

alternative, Singing River Mall asserts that Stewart failed to exhaust his

administrative remedies, because he never submitted an EEOC charge against it.

> The term "employer" as used in Title VII of the Civil Rights Act was
> meant to be liberally construed . . . .  Over the past decade, numerous
> courts have drawn upon theories and rules developed in the related
> area of labor relations in determining when separate business entities
> are sufficiently interrelated for an employee whose Title VII rights
> have been violated to file a charge against both entities.  Thus the rule
> has emerged that superficially distinct entities may be exposed to
> liability upon a finding that they represent a single, integrated
> enterprise: a single employer.  Factors considered in determining
> whether distinct entities constitute an integrated enterprise are (1)
> interrelation of operations, (2) centralized control of labor relations, (3)
> common management, and (4) common ownership or financial control.

*Trevino v. Celanese Corp.*, 701 F.2d 397, 403-04 (5th Cir. 1983) (internal citations

omitted).

The record before the Court indicates that AlliedBarton and Singing River

Mall are completely separate entities.  AlliedBarton merely contracted to hire and

supply security guards to Singing River Mall.  Both entities agree that Stewart was

solely employed by AlliedBarton.  At his deposition, Stewart admitted that he was

hired by AlliedBarton, not Singing River.  (AlliedBarton's Mot., Ex. 3 at 169, ECF

-7-

No. 40-3).  He was paid by AlliedBarton, and he submitted his resignation solely to AlliedBarton.  (*Id.*)  His employment paperwork, including his application for employment, employee handbook, training certificates, and direct deposit enrollment form, reflects that AlliedBarton was his employer.  (Singing River Mall's Mot., Ex. 1,4,6,7, ECF No. 38-1).  Both of Stewart's EEOC charges referenced only AlliedBarton as his employer.  (AlliedBarton's Mot., Ex. 14 to Ex. 3, ECF No. 40-3; Compl., Ex. 1 at 2, ECF No. 1-1).

There is no genuine issue of material fact that AlliedBarton was Stewart's sole employer.  Furthermore, even if Singing River Mall could have been viewed as Stewart's employer pursuant to Title VII, Stewart's claims against Singing River Mall would have to be dismissed for failure to exhaust administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (holding that a plaintiff must exhaust his administrative remedies before filing a lawsuit); *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) ("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims."). Therefore, Singing River Mall is entitled to summary judgment.

## III.  AlliedBarton's Motion for Summary Judgment

### A.  Stewart's Hostile Work Environment Claim

In order to set forth a hostile work environment claim, a plaintiff must demonstrate that he:

(1) belongs to a protected group; (2) was subjected to unwelcome

-8-

harassment; (3) the harassment complained of was based on race; (4)
the harassment complained of affected a term, condition, or privilege of
employment; and (5) the employer knew or should have known of the
harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). "Harassment

affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'" *Id.*  While considering a hostile work environment claim, all

of the circumstances must be considered, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Id.*

Stewart claims that Gennero used racially offensive language on one

occasion.  The only other conduct alleged by Stewart is Gennero's promotion, the

purported changes in his schedule,[2] and the emails Gennero sent to AlliedBarton

and Singing River Mall.  There is no indication that AlliedBarton's promotion of

Gennero was related to Stewart's race, and the timekeeping report produced to the

Court by both Stewart and AlliedBarton reflects that there was no substantial

change in Stewart's schedule after Gennero was promoted.  Gennero's statements

on two occasions are insufficient to establish the existence of a hostile working

environment, particularly since Stewart's race was allegedly mentioned on only one

---

[2] The alleged changes in Stewart's schedule are discussed in more detail
infra.

of the occasions.  *See Hernandez*, 670 F.3d at 654 (explaining that four instances of race-based harassment directed at two plaintiffs was insufficient to state a hostile work environment claim).  As a result, Stewart's hostile work environment claim must be dismissed.

### B.  Stewart's Retaliation Claim

In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) he participated in an activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action."  *Aryain*, 534 F.3d at 484 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).  "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."  *McCoy*, 492 F.3d at 557.  If the employer satisfies this burden, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the actual retaliatory reason.  *Id.*  "The proper standard or proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . would not have occurred 'but for' [the] protected conduct."  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007)

(quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)).[3]

Stewart has alleged that three incidents of retaliation occurred: (1) he was demoted from site supervisor to shift supervisor; (2) his work schedule was changed; and (3) Gennero sent emails claiming that Stewart may attack him.

### 1. Stewart's Demotion

Assuming that Stewart has asserted a prima facie case of retaliation related to the demotion,[4] AlliedBarton has articulated a legitimate, non-retaliatory reason for the demotion – its decision that Stewart was selected for the position in an unfair manner without an application and interview process and that Gennero should not have been excluded from consideration due to his medical leave status. There is no evidence to refute this contention.  As a result, Stewart cannot demonstrate that the demotion was retaliation for protected conduct.

### 2. Stewart's Work Schedule

Stewart claims that Gennero changed his work schedule after Gennero was promoted to site supervisor.  Stewart claims he was required to work multiple shifts within a short period of time, such as one shift from 4:00 p.m. to 12:00 a.m. followed

---

[3] Stewart has not alleged a mixed-motives theory of recovery.  Even if he had, there is no indication that Stewart's protected conduct was a factor in the demotion.

[4] The Court recognizes that there is significant evidence before the Court that Stewart did not engage in protected conduct prior to the demotion, including one statement in an EEOC charge signed by Stewart and multiple affidavits produced by AlliedBarton.  However, since Stewart claims that the statement in his EEOC charge was incorrect, the Court will not reach the issue of whether Stewart complained about Gennero's alleged racist remarks before the demotion.

by another shift eight hours later, from 8:00 a.m. to 4:00 p.m.

"[A] change in an employee's work schedule does not ordinarily represent an adverse employment action." *Otis v. Bd. of Sup'rs of La. State Univ.*, No. 01-30379, 275 F.3d 47, *1 (5th Cir. Oct. 19, 2001) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)); *see also Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (holding that a schedule change does not constitute an adverse employment action unless the change affects the employee's compensation). There is no indication that the alleged schedule change affected Stewart's pay or the terms of his employment. Therefore, the alleged changes are insufficient to state a claim for retaliation.

Furthermore, Stewart's timekeeping report reflects that he frequently worked multiple shifts before he allegedly engaged in protected activity. In fact, at times Stewart's schedule was even more strenuous prior to the events at issue. For example, on December 11, 2011, he worked from 12:00 p.m. until 12:00 a.m. the following morning. He then returned to work at 9:00 a.m. on December 12th and worked until 10:00 p.m. On December 17, 2011, Stewart worked from 12:00 p.m. to 12:00 a.m. On December 18th, he returned to work at 8:00 a.m. and worked until 4:00 p.m. On December 19, 2011, he worked from 12:00 p.m. until 4:00 a.m. on December 20th. He then returned at 2:00 p.m. on December 20th and worked until 10:00 p.m. On Christmas Eve, he worked from 2:00 p.m. until 10:00 p.m. and then returned on Christmas morning at 8:00 a.m., working until 4:00 p.m. Therefore, contrary to Stewart's assertions, shifts of this nature did not begin after he alleged

discrimination.  As a result, Stewart's allegation that his schedule was changed does not support a claim for retaliation.

### 3.  Gennero's Emails

"[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  Therefore, Gennero's emails did not constitute adverse employment actions. *See Breaux v City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, and abusive remarks are not adverse employment actions).  As a result, Stewart cannot set forth a prima facie case of retaliation related to Gennero's emails.

## CONCLUSION

For the foregoing reasons, the Court finds that Stewart's lawsuit must be dismissed.  While the Court acknowledges that the circumstances concerning the promotion of Stewart, followed by the reopening of the position and the promotion of Gennero must have made working conditions difficult for both men, there is no indication that these actions were related to Stewart's race or protected activity.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [38] filed by Singing River Mall, LLC, and the Motion for Summary Judgment [40] filed by AlliedBarton Security Services are **GRANTED**. This lawsuit is **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Strike [47] filed by AlliedBarton is **GRANTED IN PART AND DENIED IN**

-13-

**PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motions to Strike [51, 55] filed by Singing River Mall and AlliedBarton are **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 5th day of March, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-14-